IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHEN SJURSET, personally and
as next friend for N.S. and T.B.,

          Plaintiffs,

       v.

MARY ANNE MILLER, in her individual
capacity; MARIA RANDALL, in
her individual capacity; DYAN BRADLEY,
in her individual capacity; CARYN
MOLLER, in her individual capacity;
CHARLES BUTTON of Stayton City
Police Department, in his individual
and official capacity; MICHAEL MEEKS
of Stayton City Police Department,
in his individual and official
capacity; SCOTT MUMEY of Stayton
City Police Department, in his
individual and official capacity;
and CITY OF STAYTON, a municipality;

          Defendants.

Case No. 6:12-CV-00282-AA

OPINION AND ORDER

---

Mikel R. Miller
Law Office of Mikel R. Miller, P.C.
26 NW Hawthorne Ave.
Bend, OR 97701
    Attorney for plaintiff

1 - OPINION AND ORDER

Ellen F. Rosenblum
Attorney General
James S. Smith
Senior Assistant Attorney General
Damien Munsinger
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
        Attorneys for defendants Miller, Randall, Bradley,
        and Moller

Edward S. McGlone
Edward McGlone Law Offices
7307 SW Beveland Road, Suite 300
Tigard, OR 97223
        Attorney for defendants Button, Meeks, Mumey and
        City of Stayton

AIKEN, Chief Judge:

Plaintiffs seek damages under 42 U.S.C. § 1983, alleging four claims: (1) defendants violated plaintiffs' right to their familial relationship under the Fourteenth Amendment; (2) defendants violated plaintiffs' right to be free from unreasonable search and seizure under the Fourth Amendment; (3) defendant City of Stayton employed policies and customs that allowed children to be removed from their home and parents without a court order or exigent circumstances; and (4) defendants Moller and Randall presented false information at a shelter hearing in violation of plaintiffs' substantive and procedural due process under the Fourteenth Amendment. All defendants move for summary judgment on all claims, and plaintiffs move for partial summary judgment. For the reasons explained below, plaintiffs' motion is denied, and defendants' motions are granted in part and denied in part.

2 - OPINION AND ORDER

I. BACKGROUND

This action stems from a call received on the Oregon Department of Human Services ("DHS") hotline on February 18, 2010. The caller was a staff person of a medical doctor who had examined Jessica Borchers, the significant other of plaintiff Sjurset and mother of minor children NS and TB. Sjurset is the legal father of NS. The caller informed DHS that Borchers, who was then pregnant, had tested positive for methamphetamine and marijuana. Consequently, defendant Caryn Moller-Mata (then Caryn Moller), a DHS employee, attempted to contact Borchers and Sjurset to arrange a child welfare visit on February 19. Moller-Mata was unable to locate or meet either Borchers or Sjurset, so she contacted the Stayton Police Department and requested that a welfare check be conducted.

Police arrived at plaintiffs' home the following day, February 20, after 9:00 p.m. Officer Charles Button knocked on the door, which was answered by a child who was visiting the home. When Officer Button requested to speak to Borchers, Sjurset came to the door and told Officer Button that he could not speak to Borchers without a warrant. Thereafter, Borchers came to the door and stated that the police would not be allowed to enter the home, but that they could view NS and TB through the front window. The Stayton police officers then contacted DHS for further instructions.

DHS dispatched "on-call" worker Maryanne Miller to the scene.

3 - OPINION AND ORDER

After speaking to her supervisor, defendant Dyan Bradley, Miller made the decision to take custody of the children and remove NS and TB from the home. Officers Button, Meeks, and Mumey entered the home along with Miller and assisted in removing the children.

Subsequently, the children were placed in temporary foster care. Marion County Circuit Court held a "shelter hearing" on February 22, 2010, and DHS was granted custody of the children. Sjurset alleges that defendant Moller-Mata and Randall provided false information to the court which resulted in the denial of custody to Borchers and Sjurset.

Sjurset had denied Borchers' drug use at the time of the welfare visit to the home and also later at the shelter hearing. However, in order to regain custody of his child, he later acknowledged to DHS that he had accepted that Borchers had been using methamphetamine and was prepared to end his relationship with her. NS was eventually returned to plaintiff's custody. Shortly thereafter, Sjurset was appointed as guardian for TB.

Both Sjurset and Borchers had previous involvement with DHS prior to the events involved in this case. Relevantly, Borchers was incarcerated in 2007 for using methamphetamine while pregnant with NS. At that time, TB was placed into foster care, and NS was placed into foster care immediately after his birth in 2008. The children were reunited with Borchers when she completed drug addiction treatment. Sjurset was convicted of Endangering the Welfare of a

4 - OPINION AND ORDER

Minor in 2007.

On February 17, 2012, plaintiffs filed this action alleging violations of their civil rights arising from the seizure of NS and TB and the subsequent shelter hearing.

## II. STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving

party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## III. DISCUSSION

This action is before the Court pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983. Two prongs must be met in a § 1983 case: (1) a deprivation of a right secured by the Constitution and laws of the United States occurred, and (2) the deprivation was committed by an individual acting under the color of state law. See Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138 (9th Cir. 2012). Defendants concede that only the first prong is at issue.

Plaintiffs allege violations of their right to familial association and to be free from unreasonable search and seizure by DHS workers ("State Defendants") and Stayton police officers ("Stayton Defendants"). Plaintiffs also allege procedural and substantive Due Process claims against state defendants Moller-Mata

and Randall for providing false information to the court at the subsequent shelter hearing. Plaintiffs further allege that the City of Stayton is liable for maintaining unconstitutional policies or customs.

All defendants move for summary judgment on the familial association and search and seizure claims based on qualified immunity. State Defendants move for summary judgment on the judicial deception claim as well, submitting that any alleged deceptive statements were not material in the court's decision. Plaintiffs move for summary judgment on the familial association and search and seizure claims, and also the claim against the City of Stayton.

A. UNREASONABLE SEARCH AND SEIZURE AND FAMILIAL INTERFERENCE

Both sides request summary judgment on the issue of whether the removal of the children from the home on February 20, 2010 violated the Fourth Amendment's protections against unreasonable searches and seizures and the Fourteenth Amendment's Due Process Clause.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the person or things to be seized.

U.S. CONST. amend. IV. However, the Fourth Amendment does not

proscribe all warrantless state-initiated searches and seizures; rather, only those that are unreasonable. See United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (citation omitted). Further, "because the Fourth Amendment's ultimate touchstone is 'reasonableness,' the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403 (2006). Relevant to this case is the emergency aid exception, which requires that state "[o]fficials, including social workers, who remove a child from its home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant." Mabe v. San Bernadino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1108 (9th Cir. 2001).

The Fourteenth Amendment's Substantive Due Process Clause protects parents' "well-established liberty interest in the companionship, care, custody and management of [their] children." Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 27 (1981)(citation omitted). The interest "undeniably warrants deference and, absent a powerful countervailing interest, protection." Id. Due Process dictates that, generally, a pre-deprivation hearing is necessary before the state interferes in a parent's right to familial association. Brittain v. Hansen, 451 F.3d 982, 988 (9th Cir. 2006). However, state officials may remove a child from the custody of the parent without prior judicial authorization if there is reasonable

cause to believe the child is in imminent danger of serious bodily injury, and the scope of the intrusion is reasonably necessary to prevent that harm. See Wallis v. Spencer, 202 F.3d 1126, 1138 (9th Cir. 2000). Generally, "[w]hether reasonable cause to believe exigent circumstances existed in a given situation 'and all the related questions, are all questions of fact to be determined by a jury.'" Mabe, 237 F.3d at 1108 (quoting Wallis, 202 F.3d at 1138).

Plaintiffs' claims for unreasonable search and seizure and familial interference are subject to the same legal standard for determining if a constitutional violation occurred:

> The claims of the parents in this regard should be properly assessed under the Fourteenth Amendment standard for interference with the right to family association . . . [b]ecause only the children were subjected to a seizure, their claims should properly be assessed under the Fourth Amendment . . . as the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for removal of children, we analyze the Wallises' claims together.

Id. at 1148 n.8. Accordingly, the Court analyzes plaintiffs' Fourth and Fourteenth Amendment claims together as alleged against the defendants.

1. State Defendants' Liability

State Defendants Miller and Bradley contend that they are entitled to qualified immunity for the removal of the children from the home.[1] Qualified immunity shields government officials from

_____

[1] Plaintiffs concede that Moller-Mata and Randall did not participate in the decision to remove the children; therefore, plaintiffs' Fourth and Fourteenth Amendment claims against these

liability for money damages unless two prongs are met. First, the official must have violated a statutory or constitutional right, and second, that right must have been "clearly established" at the time of the challenged conduct. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments . . . [and] protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 2085 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Further,

> [t]he inquiry called for by this doctrine must be undertaken in the light of the specific context of the case, not as a broad general proposition . . . the result depends very much on the facts of each case . . . the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

Mueller v. Auker, 700 F.3d 1180, 1185 (9th Cir. 2012) (internal citations and quotations omitted). Thus, this case requires a fact-specific analysis to determine whether State Defendants' actions in removing the children were reasonable, even if flawed.

State Defendants argue that the totality of the circumstances of this case - including the threat to the children posed by Borchers's methamphetamine use, the actions of Borchers and Sjurset in response to DHS and police contact, and the limited alternatives available to DHS officials at the time of the incident - support the conclusion that removal of the children was justified.

---

defendants are dismissed.

State Defendants first suggest that the nature of the threat to the children justified their actions. In support, State Defendants invoke Or. Rev. Stat. § 419B.502(7): "[C]onduct by the parent that knowingly exposes any child of the parent to the storage or production of [methamphetamine] is extreme conduct that permits a court to terminate parental rights." While State Defendants acknowledge that Oregon law recognizes that a parent's drug use alone is insufficient cause to remove a child,[2] they maintain that methamphetamine use by a parent can physically impact a child, and can also impact a parent's judgment and capabilities such that the parent is no longer an effective care giver. State defendants also submit that drug addiction can cause parents to fail to protect their children, and that methamphetamine is a particularly heinous type of drug addiction.

State Defendants thus maintain that Borchers' alleged history of drug addiction was an important factor in evaluating the threat to the children. They note that Borchers had previously lost custody of her children for reasons related to drug use, that she was pregnant and had recently tested positive for methamphetamine, that her doctor's office had contacted had DHS, and that she was not returning phone calls made by DHS.

---

[2] See, e.g., State ex rel. Juvenile Dep't of Marion Cnty. v. Randall, 96 Or App 673, 773 (1989) (parent's use of controlled substances alone is insufficient to establish that the child's welfare is endangered).

State Defendants further contend that facts about and actions by Sjurset factored into their appraisal of the threat to the children's safety; specifically, that Sjurset had prior convictions for possession of a controlled substance and child endangerment. State defendants also claim to have considered that Sjurset was living with Borchers at the time, and, like her, was not responding to DHS's phone calls.

Plaintiffs respond that there was no fact, other than Borchers's positive drug test, which indicated that drug use was causing a danger to the children. Plaintiffs contend that State Defendants were unaware of any drug use around the children at the time of the seizure, and that methamphetamine is no more dangerous than certain prescription drugs such as Oxycontin and Vicodin. Plaintiffs also point out that even though Sjurset was previously convicted of Endangering the Welfare of a Minor under Or. Rev. Stat. § 163.575, that statute does not require any actual danger to a child; rather, a conviction under the statute is simply a drug possession charge against a parent. Plaintiffs emphasize that State Defendants' motion fails to particularize any specific injury or threat faced by NS or TB to support their removal, and that the absence of articulable facts indicating danger of serious bodily harm warrants summary judgment in plaintiffs' favor.

Assaying the parties' arguments, there are a number of factual issues which remain unresolved regarding the nature of the alleged

threat to the children. While the parties agree that Borchers was caring for the children and had tested positive for methamphetamine while she was pregnant, there is no evidence presented to suggest that Borchers was using or under the influence of any drug in front of NS or TB. While the Court is inclined to agree with State Defendants that methamphetamine use can lead to an addiction which would almost certainly impair a parent's ability to care for young children, the facts surrounding Borchers's alleged methamphetamine use are simply unclear. There is no evidence of where or when Borchers was using or storing methamphetamine such that NS or TB would have been exposed to it. Borchers's and Sjurset's home was not fully searched by DHS or police at the time of the welfare check, and State Defendants concede that there was no visual evidence of drug use in the area of the house that the officials occupied while the children were removed.

Nevertheless, State Defendants assert that waiting for harm to befall a child before acting in a situation where the child could be exposed to methamphetamine use is contrary to DHS's agency charge and unsupported by Oregon case law. See, e.g., Mueller, 700 F.3d at 1187 ("When a child's safety is threatened, that is justification enough for action first and hearing afterward."); State ex rel. Dep't of Human Servs. v. J.S., 219 Or. App. 231, 257-58, 182 P.3d 278, 292 (2008)(cases involving previous termination of parenting rights based on a certain conduct or condition require

a focus on likelihood of future harm). Further, case law requires the Court to consider that qualified immunity allows officials "to make reasonable but mistaken judgments about open legal questions." al-Kidd, 131 S. Ct. at 2085. Thus, even if the State Defendants mistakenly assessed any threat to the children, so long as their assessment was reasonable, qualified immunity will attach.

State Defendants submit that Borchers's past and present methamphetamine use, the failure to respond to DHS phone messages, and the refusal to allow DHS entry to the home supports the reasonableness of the challenged removal action. State Defendants maintain that observing the children through the window was inadequate to assess their well-being; although the children appeared safe, State Defendants were not able to communicate with the children through the window or assess the children's immediate environment for potential dangers related to drug use.

State Defendants also argue that the limited alternatives available to them at the time of the incident ought to be considered. They maintain that DHS was faced with one of two choices: either enter the house and seize the children, or leave "a drug-addicted mother who they knew was using in charge of two small children." State Defs.' Mem. in Supp. Mot. Summ. J. at 12. State Defendants explain that had they not taken custody of the children, thirty-six hours would have elapsed before they could procure a warrant; a significant time frame for children in possible danger.

14 - OPINION AND ORDER

Plaintiffs respond that the failure to return DHS's calls was a result of being out of town and/or otherwise preoccupied. Plaintiffs also maintain that the initial refusal to allow the police and DHS into their home was based solely upon the failure of the officials to present a warrant and the assertion of a constitutional right. Plaintiffs note that Miller was able to view the children through a window to establish the children's safety, and they further emphasize the absence of circumstances supporting "imminent danger" to the children.

Given the disputed facts of this case, the Court is not persuaded that summary judgment on the issue of State Defendants' liability is appropriate in any party's favor. For example, issues of fact remain unresolved as to the nature of the parents' actions when DHS first attempted to contact them via telephone and later at plaintiffs' home. There is a minor dispute about how many phone calls and messages Borchers and Sjurset received from DHS on February 19, the day prior to the welfare check. However, the precise number of calls and messages exchanged between Borchers, Sjurset, and DHS is not dispositive. The issue, rather, is whether their failure to return the calls reasonably contributed to DHS's belief that they were attempting to avoid contact. Similarly, whether a visual inspection of the children through a front window was a sufficient verification of their safety is a fact best determined by a jury. While plaintiffs contend that the exercise of

15 - OPINION AND ORDER

the right to refuse entry to their home should not be considered in evaluating whether State Defendants' actions were reasonable, the Court is not prepared to decide that the exercise of a constitutional right cannot be considered under the totality of the circumstances.

Additionally, the competing interests of the parties and the factual circumstances involving the ultimate removal of the children preclude summary judgment. The crux of the matter is whether the facts available to DHS at the time of the welfare check were sufficient to form a reasonable, even if mistaken, belief that the children would be in imminent danger if DHS left the home without the children to procure a court order. Even if the State Defendants were justified in deciding to enter the home and contact the children, absent visible signs of imminent danger, the Court cannot find as a matter of law that the decision to proceed with removing the children was reasonable and protected by qualified immunity. Likewise, given the disputed issues of fact regarding the contacts with DHS and the nature of Borchers's alleged methamphetamine use, the Court cannot find as a matter of law that State Defendants violated the clearly established rights of plaintiffs. Thus, the parties' cross motions for summary judgment on this issue are denied, except for State Defendants' motion with respect to Moller-Mata and Randall.

    2. City of Stayton Police Officer Liability

Plaintiffs argue that City of Stayton police officers ("Stayton Defendants") violated plaintiffs' Fourth and Fourteenth Amendment protections by entering the home and removing the two children pursuant to direction from DHS workers. The officers maintain that they are protected by qualified immunity because their actions were made at the behest of DHS workers, who had already asserted protective custody of the children prior to the officers' entry into the home. Plaintiffs argue that DHS had no authority to direct the police action, and therefore, absent a warrant or exigent circumstances, the removal of the children by police constituted an illegal search and seizure.

The parties agree that DHS workers, not the police officers, decided to take custody of the children prior to the officers' entry into the home. The only issue is whether it was objectively reasonable for the Stayton Defendants to enter the home and assist Miller in removing the children absent a warrant or a court order.

Stayton Defendants cite several Oregon statutes and cases in support of their argument that qualified immunity shields their reliance on Miller's instructions. Pursuant to state law, DHS is the state agency charged with providing child protective services in Oregon. Or. Rev. Stat. § 309.010(2)(a). Further, DHS and law enforcement agencies share the responsibility to investigate reports of child abuse, Or. Rev. Stat. § 419B.020, and a report of abuse to DHS creates a special relationship between DHS and the

children who are at risk. <u>Blachly v. Portland Police Dep't.</u>, 135 Or. App. 109, 118, 898 P.2d 784, 789 (1995).

Accordingly, Stayton Defendants submit that when DHS workers carry out an investigation, police offers may reasonably rely on those workers' appraisals of a given situation when the officers themselves lack the requisite knowledge of the situation. <u>See</u> <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 471-72 (9th Cir. 2007) (finding that probable cause may exist "under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene)"). Stayton Defendants cite cases wherein a police officer without personal knowledge of a situation relied on a fellow officer's direction; the courts found that so long as the information was objectively reasonable and the officer had a good faith belief that the information was reliable, qualified immunity attached. <u>See, e.g.</u>, <u>United States v.</u> <u>Hensley</u>, 469 U.S. 221, 232 (1985); <u>United States v. Butler</u>, 74 F.3d 916, 921 (9th Cir. 1996). Here, however, the Stayton Defendants did not rely on the word of a fellow police officer, but rather that of a DHS worker.

Regardless, plaintiffs do not dispute that the Stayton Defendants possessed the same information known to Miller. The information available to them, and undisputed by plaintiffs, was that the mother of the children in the home recently tested positive for methamphetamine while pregnant, that the parents were

not fully cooperating with DHS requests to check the children, that both parents had prior convictions relating to drug use and child endangerment, and that a warrant could not be procured for approximately thirty-six hours. However, just as the Court is unable to determine as a matter of law that the State Defendants' actions in removing the children were reasonable based on the totality of the circumstances, the Court is also unable to rule whether the Stayton Defendants reasonably relied on Miller when entering the home and removing the children.

While the totality of the circumstances known to the Stayton Defendants may support a finding that their entry into the home was reasonable, the case is weaker for the removal action. Once the Stayton Defendants entered the home, they apparently saw no physical evidence suggesting that the children were in imminent danger. Further, no defendant suggests that Borchers was in any way under the influence of substances, or that there was evidence of the existence of drug paraphernalia. Although the Stayton Defendants argue that they did not take action until Miller arrived on the scene and announced she had taken custody of the children, the Court is not convinced that reliance on Miller was reasonable as a matter of law, give the apparent absence of exigent circumstances or visible signs of imminent danger to NS and TB. Thus, plaintiffs have successfully raised a question of fact as to whether the Stayton Defendants violated their clearly established

19 - OPINION AND ORDER

rights by removing the children from the home, and summary judgment in favor of the officers is therefore inappropriate.

For the same reasons, summary judgment in favor of plaintiffs is not warranted. Plaintiffs argue that the Stayton Defendants would be entitled to rely on the authority of Miller only if they had confirmed that she had a court order. However, as discussed above, a court order is not always required for DHS to take protective action if DHS workers have an objectively reasonable belief that children are in imminent danger. Further, it was DHS, not the Stayton police, that made the decision to enter the home and remove the children.

Additionally, even though Officers Button and Meeks testified that they did not visually observe conditions that led them to believe that the children were in imminent danger, the circumstances did not fully lend themselves to ready observation of the alleged danger involved. The dangers sited by DHS – that Borchers had recently used methamphetamine, that she and Sjurset appeared to be avoiding contact with DHS, and that they had prior convictions related to methamphetamine use and endangering children – were all non-observable facts. Further, Oregon courts have found that dangers to a child's welfare are not always readily apparent: "a single condition or circumstance may suffice to show a reasonable likelihood of harm . . . [and] need not involve the child directly, but may be found harmful by reason of creating a

harmful environment for the child." <u>State ex rel. Juvenile Dep't of Lane Cnty. v. Smith</u>, 316 Or. 646, 653 (1993); <u>see also</u>, <u>State ex rel. Dep't of Human Servs. v. J.S.</u>, 219 Or. App. 231, 261-62 (2008) (in cases where there have been previous terminations based on similar conduct and conditions, the focus should be in large part on the likelihood of future harm).

In sum, this case involves disputed issues of fact that must be resolved by the trier of fact, and summary judgment is denied.

3. City of Stayton Municipal Liability

Plaintiffs also allege a municipal liability claim, arguing that the City of Stayton had a policy of not training officers regarding the correct legal standard for removing children from their home and parents without a court order.

> A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 694 (1978). To establish municipal liability under § 1983, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the County had a policy; (3) the policy amounted to deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation." <u>Mabe v. San Bernadino Cnty, Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1108 (9th Cir. 2001).

<u>Burke v. Cnty. of Alameda</u>, 586 F.3d 725, 734 (9th Cir. 2009). Besides the naked assertion that the City of Stayton has a policy of "not training its officers in the correct legal standards," plaintiffs offer no evidence that such a policy existed, that it

21 - OPINION AND ORDER

amounted to deliberate indifference to plaintiffs' constitutional rights, or that it was the moving forced behind the constitutional violation.

Granted, Officer Meeks testified that he had no specific recollection of being trained in the area of removing children from homes, and Officer Mumey testified that he did not inquire whether DHS had a court order. However, such statements are not evidence that a policy of non-training exists. "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989). Furthermore, Officer Button testified that he did receive training in cooperation with DHS, a fact which plaintiffs do not appear to dispute. For these reasons, there is no basis for the Court to conclude that the City of Stayton had a policy of not training officers on the removal of children from a parent's home. Accordingly, summary judgment is granted.

B. JUDICIAL INTERFERENCE

Plaintiffs also argue that DHS worker defendants Moller-Mata and Randall intentionally provided false information to the court that made the custody determination for NS and TB. State defendants move for summary judgment on this claim.

> The plaintiff alleging judicial deception must make a
> substantial showing of deliberate falsehood or reckless
> disregard for the truth and establish that but for the
> dishonesty, the challenged action would not have

occurred. If the matter survives the summary judgment
phase, the matter should go to trial.

Butler v. Elle, 281 F.3d 1014 at 1024 (th Cir. 2002)(quoting Hervey
v. Estes, 65 F.3d 784, 788-89 (9th Cir. 1995). Materiality is a
question for the court, and state of mind is for the jury. Id.

Plaintiffs cite the State Defendants' supporting memorandum
and a list of facts that plaintiffs claim are fabrications or
deliberate misstatements given to the judge. However, State
Defendants describe the alleged falsehoods and methodically explain
why each of them is insufficient to maintain an action. See State
Defs.' Mem. in Supp. Mot. Summ. J. at 13-19. The Court is persuaded
by the explanation of the State Defendants.

The only potentially probative evidence presented by
plaintiffs on the issue of judicial interference is Sjurset's
declaration, in which he states that he "listened to Ms. Moller
tell the Court that NS and TB were in danger if left in my care.
That was totally false and based on no facts or evidence. I was
never a danger to my children and to tell the Court otherwise is a
lie." Sjurset Decl. ¶ 11. However, this submission is little more
than a bald assertion by Sjurset, as he provides no transcript or
other record of the hearing. Further, even if Moller-Mata did say
that NS and TB were in danger if left in Sjurset's care, the Court
views the statement as an opinion as opposed to a misstatement of
fact. The statement is not supported by any information which would
allow the inference of intent to deceive. In short, there is

23 - OPINION AND ORDER

nothing which suggests that the statement was a deliberate falsehood or reckless disregard for the truth. Lastly, plaintiffs have not shown that if not for this alleged dishonesty, the outcome of the shelter hearing would have changed. Thus, the judicial interference claim fails.

## IV. CONCLUSION

State Defendant's motion for summary judgment (doc. 29) is GRANTED in part and DENIED in part. The motion is GRANTED as to plaintiffs' claim of judicial interference. The motion is GRANTED as to plaintiffs' claims of interference with familial association and unreasonable search and seizure against defendants Moller-Mata and Randall and DENIED as to those claims against defendants Miller and Bradley. Stayton Defendants' motion for summary judgment (doc. 40) is GRANTED as to plaintiffs' claim of municipal liability and DENIED as to plaintiffs' claims of interference with familial association and unreasonable search and seizure against the police officers. Plaintiffs' motion for partial summary judgment (doc. 36) is DENIED.

IT IS SO ORDERED.

Dated this _____9th_____ day of ~~July,~~ August 2013.


_____
Ann Aiken
United States District Judge


24 - OPINION AND ORDER